UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TYRELL W., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:25-CV-223-JSD |
| | ) |
| FRANK BISIGNANO,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Tyrell W. ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381, *et seq.* The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 7.) For the reasons stated herein, the Court affirms the Commissioner's denial of Plaintiff's application.

**I.   BACKGROUND**

On October 12, 2022, Plaintiff applied for SSI, alleging that his disability began on September 1, 2022. (Tr. 145-47, 182.) His application was initially denied (Tr. 82), as was his

---

[1] Frank Bisignano was confirmed as the new Commissioner of Social Security in May 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted, therefore, for Leland Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

request for reconsideration (Tr. 93). On March 15, 2023, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 100.) ALJ Koren Mueller held a hearing on October 12, 2023. (Tr. 31.) On February 13, 2024, the ALJ issued an unfavorable decision. (Tr. 12-26.) Plaintiff filed a timely Request for Review of Hearing Decision with the Appeals Council, which was denied on January 8, 2025. (Tr. 1-6, 142-44.) Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the Commissioner's final decision.

As relevant, Plaintiff was 22 years old when he applied for benefits and 23 years old on the date of the ALJ's decision. (Tr. 24-25.) Throughout the proceedings in this case, he has remained a "younger individual" as that term is defined by the regulations. (Tr. 24.) *See* 20 C.F.R. § 416.963(c). Plaintiff has limited education and work experience. (Tr. 24-25, 39-41, 48.) He alleged disability as a result of bipolar disorder and depression. (Tr. 181.) He testified that he has episodes up to four times per month where his mood swings, he cannot control his behavior, and he stays up with no sleep for up to forty-eight hours as a time. (Tr. 43-47.) He stated that this resulted in several instances of hospitalization and employment termination. (*Id.*) Specifically, Plaintiff reported being fired from several jobs due to his inability to avoid conflict with others, which included destroying property and making threats. (Tr. 40-41, 45-47, 51.) The Court accepts the facts as set forth in the parties' respective statements of fact and responses and will otherwise cite the record as needed to address the parties' arguments.

## II.     STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Act, a claimant must prove he is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant

3

disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity (RFC), 20 C.F.R. § 416.920(a)(4), which is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1); *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, they will be found disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R. § 416.960(c)(2); *Moore*, 572 F.3d at 523; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found as follows: Plaintiff had not engaged in substantial gainful activity since his SSI application date of October 12, 2022; Plaintiff had severe impairments of bipolar disorder and attention deficit-hyperactivity disorder; and

4

Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (Tr. 18.) The ALJ found that Plaintiff had the following RFC:

> [Plaintiff can] perform a full range of work at all exertional levels but with the following non-exertional limitations: He is able to complete simple, routine tasks in an environment with minimal changes in job duties and setting. He must avoid fast-paced production work, such as jobs requiring hourly quotas. He can interact occasionally with supervisors and co-workers. In addition, the claimant must avoid all interaction with the general public.

(Tr. 20.) At Step Four, the ALJ found that Plaintiff had no past relevant work (Tr. 24); and at Step Five, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform (Tr. 25).

### IV.   DISCUSSION

Plaintiff challenged the ALJ's decision on the following two grounds: (1) the ALJ failed to properly evaluate medical opinion evidence, and (2) the RFC is not supported by substantial evidence. (ECF No. 15.)

#### A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the

5

Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted); *see Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *See Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B.  ALJ's Evaluation of Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the opinions of State agency medical consultants Robert Cottone, Ph.D., and Steven Akeson, Psy.D. (ECF No. 15 at 3-6.)

The ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under this regulation, ALJs are to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors, including supportability, consistency, the medical source's relationship with the claimant, their specialization, their understanding of the Social Security Administration's disability policies, and their familiarity with other evidence in the claim. 20 C.F.R. § 404.1520c(c). "The first two factors—supportability and consistency—are the

6

most important." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)). In considering supportability, the ALJ is to look to the relevancy of the objective medical evidence and supporting explanations used to support the medical opinion or finding at issue. *See* 20 C.F.R. § 404.1520c(c)(1). To consider consistency, the ALJ is to compare the medical opinion or finding at issue with the evidence from other medical sources and nonmedical sources in the claim. *See* 20 C.F.R. § 404.1520c(c)(2). ALJs must "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 404.1520c(b).

The ALJ evaluated the persuasiveness of Dr. Cottone's and Dr. Akeson's opinions as follows:

> Robert Cottone, Ph.D., and Steven Akeson, Psy.D., evaluated the claimant's medical history for the Agency in November 2022 and January 2023 (Exhibits B3A/2-6 & B4A/4-8). While their "B" criteria assessments differed, both examiners concluded that the claimant's mental impairments are severe, but not debilitating, which is generally persuasive since they supported their opinions by conducting a thorough review of the claimant's mental health history and providing detailed narratives of their findings before arriving at their conclusions. The overall finding of severe, but not debilitating mental impairments is consistent with the claimant's generally normal mental status examinations throughout the record. Aside from the isolated episodes when he required psychiatric hospitalization for erratic behavior caused by his anger and depressive issues, the claimant's mental status examinations were otherwise routinely unremarkable throughout the treatment notes (Exhibits B2F/9, B5F/2, 8, 10, 12, 14, 16, 21, 23, 25, 29, 31, B7F/6, 15, 26, 63, 74, 79-80, 132-133, 188-189, 193-194, 204-206, 216-218, 261, 296, 310, 331-332, 341, 344, 347, 351, 358 & B8F/14).

(Tr. 24.)

Plaintiff first contends that the ALJ erred in "evaluat[ing] the two different opinions together and treat[ing] them as one." (ECF No. 15 at 5.) This argument is unpersuasive here. Initially, Plaintiff's argument is vague, as he does not provide any reason why the ALJ's consideration of the state agency medical consultants' opinions together was erroneous or how it

7

impacted the ALJ's persuasiveness determinations. Plaintiff is also incorrect that the ALJ treated the opinions "as one"; rather, the ALJ identified the separate opinions by date and citation and acknowledged that the consultants' opinions differed. Moreover, it appears the ALJ merely evaluated the opinions simultaneously for efficiency, as the opinions, and the ALJ's supportability and consistency discussion as to each opinion, largely overlapped. *C.f., Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987) ("An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where…the deficiency probably had no practical effect on the outcome of the case.").

Plaintiff next argues that the ALJ failed to adequately articulate supportability and consistency in examining the persuasiveness of the consultants' opinions. This Court disagrees. As to both consultants' opinions, the ALJ adequately articulated supportability by finding their opinions supported by their thorough review of Plaintiff's mental history and detailed narratives explaining their findings.[2] *See* 20 C.F.R. § 404.1520c(c)(1); *Starman v. Kijakazi*, No. 2:20-cv-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sep. 29, 2021) (supportability discussion, includes for example, the relevancy of the objective medical evidence relied on in the opinions, the supporting explanations for the findings, or the form of the opinions); *Gary D. v. King*, No. 24-CV-961, 2025 WL 554026, at *4 (D. Minn. Feb. 3, 2025) (finding sufficient supportability discussion where ALJ discussed state agency doctor's opinions in relation to medical record; noting that consistency and supportability analyses can somewhat overlap).

---

[2] Plaintiff contends that the consultants did not adequately explain their findings; however, as stated by the ALJ, the consultants thoroughly review the record (Tr. 63-65, 71-75) and explained each recommended limitation (Tr. 66-68, 76-78). The Court also notes that while portions of Dr. Cottone's opinion are less detailed that Dr. Akeson's, Dr. Cottone's opinion is also less restrictive than both Dr. Akeson's opinion and the ALJ's RFC determination.

8

The ALJ also adequately articulated consistency as to both consultants' opinions by comparing their overall opinions on the degree of Plaintiff's mental impairments to medical records showing generally normal mental status aside from episodes requiring hospitalization. *See* 20 C.F.R. § 404.1520c(c)(2); *Collins v. Kijakazi*, No. 6:20-CV-03237-MDH, 2021 WL 3909670, at *3 (W.D. Mo. Aug. 31, 2021) (ALJ properly considered consistency of medical provider's opinion by comparing the provider's opinions to medical records, treatment history, and activities of daily life).

To the extent that Plaintiff argues the ALJ should have provided additional explanations or that the ALJ failed to consider evidence supporting a different conclusion, the regulations do not require the ALJ to address each part of the consultants' opinion. *See Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) ("[T]he ALJ is free to accept some, but not all, of a medical opinion …. [a]nd the ALJ is not required to explicitly ... reconcile every conflicting shred of medical evidence."); *McClure v. Saul*, No. 1:20-CV-150, 2021 WL 3856577, at *7 (E.D. Mo. Aug. 30, 2021) ("[20 C.F.R. § 404.1520c] does not require an ALJ to address each and every part of a medical opinion to show that the entire opinion was properly considered.").

For all these reasons, this Court finds that the ALJ sufficiently discussed Dr. Cottone's and Dr. Akeson's opinions, and Plaintiff's arguments to the contrary are unavailing.

### C. RFC Determination

Plaintiff argues that the RFC is not supported by substantial evidence because (1) the ALJ improperly relied on her own inferences of the medical reports, (2) the only medical evidence supporting the RFC is from State agency doctors, (3) and the RFC fails to account for Plaintiff's episodes requiring hospitalization. (ECF No. 15 at 6-9.)

9

An RFC is the most a claimant can still do, despite the claimant's physical and mental limitations. 20 C.F.R. § 416.945(a)(1). "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000); 20 C.F.R. § 416.945(a)(1). "Ultimately, the RFC determination is a 'medical question' that 'must be supported by some medical evidence of [the plaintiff's] ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). "Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional." *Williams v. Saul*, No. 2:19-CV-88 RLW, 2021 WL 1222770, at *10 (E.D. Mo. Mar. 31, 2021) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). However, the "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted). Nonetheless, it is the claimant's burden of proof to establish the RFC. *See Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019); 20 C.F.R. § 404.1512(a). While an ALJ is not permitted to draw his/her own inferences about a claimant's functional ability from medical reports, *Combs*, 878 F.3d at 646, there is no requirement that an RFC finding be supported by a specific medical opinion, *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022). Finally, "[w]here the medical evidence is equally balanced ... the ALJ resolves the conflict." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995).

This Court finds the RFC determination supported by substantial evidence, *see Biestek*, 139 S. Ct. at 1154, and Plaintiff's arguments to the contrary fail. After thoroughly reviewing Plaintiff's medical records, the ALJ based the RFC determination on the entire record, including the consultant's opinions, examination records, treatment history, and Plaintiff's activities of daily life (Tr. 20-24), which speak directly to Plaintiff's ability to function in the workplace. *See Hensley*

10

*v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) (finding medical evidence, including disability exam and treatment records, evidenced Plaintiff's ability to function in the workplace). Specifically, the ALJ considered, *inter alia*, records documenting Plaintiff's low stress tolerance, impulse control and anger issues, compliance and symptoms with medication, and history of hospitalization and employment terminations. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002) (substantial evidence supported RFC determination based on medical records, consultant and other medical opinions, and some aspects of plaintiff's testimony). The ALJ's reliance on this evidence in determining the RFC defeats Plaintiff's argument that the ALJ improperly based the RFC on her own inferences rather than evidence from the record. *See Noerper*, 964 F.3d at 744 (RFC must be supported by some medical evidence of claimant's ability to function in the workplace; clarifying that ALJ is not required in all instances to "obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality").

Plaintiff appears to challenge the ALJ's decision for failing to correspond to one specific medical opinion (ECF No. 15 at 6-7); however, the Act does not require the RFC to be supported by a specific medical opinion, *see Schmitt*, 27 F.4th at 1360, and as stated above, the RFC determination is supported by substantial evidence in the record, *see Hurst v. Kijakazi*, No. 4:20-CV-00080-MTS, 2021 WL 3021424, at *7 (E.D. Mo. July 16, 2021) ("[O]bjective medical findings and evidence can constitute sufficient medical support for an RFC assessment even in the absence of medical opinion evidence."); *see also Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761, at *1 (8th Cir. 2023) (unpublished per curiam) ("ALJ was not required to adopt the exact limitations set forth in the opinions she found persuasive") (citing *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) (while ALJ did not adopt opinion verbatim which limited claimant to

11

minimal interaction with others, ALJ incorporated opinion by limiting claimant to occasional public contact, and RFC assessment was supported by substantial evidence)); *Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016) ("Faced with the conflicting opinions, the administrative law judge adopted a middle ground…. In this manner, the judge arrived at an assessment between the two medical opinions without fully embracing either one).

Plaintiff's argument that the RFC is solely supported by the consultants' opinions is also unpersuasive, as the ALJ relied on the consultants' opinions as a part of the record, which as a whole, provides substantial support for the RFC. *See Markland v. Colvin*, 127 F.Supp.3d 1031, 1045 (E.D. Mo. 2015) ("[A]n ALJ may appropriately rely on non-examining opinions as part of his RFC analysis."); *Webb v. Berryhill*, 294 F.Supp.3d 824, 901 (D.S.D. 2018) ("[W]here opinions of non-examining, consulting physicians along with other evidence in the record form the basis for the ALJ's RFC determination, such a conclusion may be supported by substantial evidence.") (citing *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004)).

Also unpersuasive is Plaintiff's argument that the ALJ erred in relying on the consultants' opinions because they provided little explanation for their findings and were not able to review the entire record. Initially, as explained earlier in this decision, the consultants reviewed the medical record in detail and explained each of their conclusions. (Tr. 63-68, 71-78.) Next, while the consultants did not review the entire record, including a 2023 suicide attempt and 2016 psychological evaluation, the ALJ considered these records in reaching its decision (Tr. 19, 23-24). *See Walker v. Kijakazi*, No. 6:21-CV-3235-NKL, 2022 WL 3036639, at *6 (W.D. Mo. Aug. 1, 2022) ("[A]n ALJ can rely on the opinion of a state agency medical consultant who did not have access to all the records, so long as the ALJ conducts an independent review of the evidence and takes into account portions of the record the consultant had not considered."). As such, the ALJ

12

based the RFC on all relevant evidence in the record. *See Jones v. Kijakazi*, No. 1:23-CV-00016-SNLJ, 2024 WL 3509498, at *4 (E.D. Mo. July 23, 2024) (ALJ may rely in part on opinions rendered early in the relevant period as the RFC must be based on all relevant evidence in the record).

Plaintiff finally contends that the RFC fails to account for Plaintiff's episodes requiring hospitalization, as it does not allow for absences or off-task time. (ECF No. 15 at 8-9.) This Court finds the ALJ appropriately considered all records of hospitalization, along with corresponding treatment notes, to determine an RFC supported by substantial evidence, and Plaintiff fails to show that the ALJ erred in not including additional RFC limitations in light of these hospitalizations. *See Despain*, 926 F.3d at 1027.

The ALJ reviewed the medical records in the time leading up to the October 12, 2022, alleged date of disability, noting that from January 2021 to March 2022, Plaintiff reported doing "fine" while taking his medication. (Tr. 21, 654, 656, 665, 784-85.) From July 2022 to mid-October 2022, Plaintiff was hospitalized several times for suicidal ideation, repeatedly reporting family stressors and non-compliance with medication and testing positive for marijuana and amphetamines. (Tr. 21-22, 559, 583, 587, 589, 591, 595-96, 602, 614, 639.) The ALJ noted that Plaintiff's mental status was generally unremarkable when discharged and concluded that many of these episodes were the result of Plaintiff's medication noncompliance and situational family stressors. (Tr. 21-22.) From late October 2022 through December 2022, Plaintiff received regular doses of his medication via injection and continued to test positive for marijuana and amphetamines. (Tr. 22, 530-37.) As detailed by the ALJ, Plaintiff was hospitalized on January 23, 2023, after a suicide attempt by overdose. (Tr. 23, 458-523.) He was admitted for medical observation primarily due to the risk of late onset seizures, and his mental status was unremarkable

13

upon discharge on January 30, 2023. (*Id.*) On March 1, 2023, Plaintiff received his medication via injection, showed a "guarded" demeanor and difficulty dealing with stress and problem solving, but otherwise presented with normal mental status. (Tr. 23, 457.) The ALJ noted that the most recent treatment notes, from June 27, 2023, show that while Plaintiff continued to occasionally use marijuana, he no longer used amphetamines, and was complying with his medications. (Tr. 23, 1108-09.) His injection medication dosage was increased, and he was encouraged to engage in therapy. (Tr. 23, 1110.) On September 3, 2023, Plaintiff presented in the ER with suicidal thoughts, but he chose to be discharged after only a few hours, indicating that his suicidal thoughts had improved; his symptoms had been exacerbated by a fight with his mom; and he had been compliant with his injection medication, receiving the most recent dose one week prior. (Tr. 23, 1112-15.) His physical examination was unremarkable, and his mental status was normal. (Tr. 23, 1114-15.)

Based on this evidence, it was reasonable for the ALJ to conclude that Plaintiff's past hospitalizations were the result of medication noncompliance and situational family stressors and that such instances did not necessitate additional limitations. *See Consol. Edison*, 305 U.S. at 229 ("Substantial evidence … means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Indeed, as opined by Dr. Cottone, the records substantially support that Plaintiff's "condition is stabilized when med. compliant." (Tr. 65.) Thus, the ALJ's decision not to include additional limitations to account for future episodes of hospitalization fell within a reasonable "zone of choice." *See Nelson v. Colvin*, No. 11-3292-CV-S-DPR, 2013 WL 2646698, at *1 (W.D. Mo. July 12, 2023) ("[A] court should not disturb an ALJ's denial of benefits if the decision 'falls within the available zone of choice.' A decision may fall within the 'zone of choice' even where the court 'might have reached a different conclusion had [the court] been the initial finder of fact.'" (quoting *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011)); *see also*

14

*Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (even if substantial evidence in record could have supported contrary outcome, this court must affirm ALJ's decision if there is also substantial evidence to support it).

### V.     CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Frank Bisignano shall be substituted for Leland Dudek as the Defendant in this suit pursuant to Fed. R. Civ. P. 25(d).

JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of February 2026.